IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES M. SHOFFNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 5427 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Charles M. Shoffner's (Shoffner) motion for summary judgment. For the reasons stated below, the motion is granted in part and this matter is remanded to Defendant Social Security Administration (SSA) for further proceedings consistent with this opinion.

**BACKGROUND**

The record reflects that in May of 1999 Shoffner, who is married and a father of three children, had been working as a machinist for twenty years, and did landscape work on the side. Shoffner was returning from a job to the main base and was a passenger in a landscaping truck when an accident occurred, causing the truck to tip onto its side. During the accident, the driver was thrown onto Shoffner,

1

causing serious spinal injuries to Shoffner. Shoffner also alleges that he suffers from certain mental impairments. Shoffner alleges that he was disabled beginning in May of 1999. In May of 2009, Shoffner applied for Supplemental Security Income (SSI). Shoffner's application was denied, and then denied again on reconsideration. Shoffner then requested an evidentiary hearing before an Administrative Law Judge (ALJ). After a hearing (Hearing), the ALJ denied the claim for SSI, and the Appeals Council subsequently denied Shoffner's request for review. Shoffner subsequently filed the instant action on August 10, 2011. Shoffner has filed a motion for summary judgment, seeking to have the ALJ's decision reversed and remanded for an award of benefits, and seeking in the alternative to have this case remanded to the ALJ for further proceedings to correct errors made by the ALJ. SSA opposes the motion for summary judgment and requests that the court affirm the ALJ's decision.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as her age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, he is not disabled." *Id.*

In the instant appeal, Shoffner argues: (1) that the ALJ erred in his step three analysis, (2) that the ALJ erred in his RFC determination, (3) that the ALJ erred in evaluating the credibility of Shoffner, and (4) that the ALJ erred in his step five analysis.

I. Step Three Analysis

Shoffner argues that the ALJ erred in his step three analysis, when he was required to compare the impairment to a list of impairments that are considered conclusively disabling, and determine whether Shoffner's impairment satisfies or

3

equals one of the listed impairments. *Craft*, 539 F.3d at 673-74. The ALJ concluded that Shoffner's "impairments do not meet or medically equal any listed impairment. . . ." (AR 11). Shoffner points to medical evidence in the record that appears to indicate that Shoffner met the requirements for Listing 1.04. While an ALJ does not need to point to every portion of the record upon which the ALJ relied, the ALJ must do more than provide conclusory statements and must build a logical bridge from the record to his conclusions. *See Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013)(stating that "[i]n rendering a decision, an ALJ must build a logical bridge from the evidence to his conclusion")(internal quotations omitted)(quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). The ALJ in considering the criteria of any section in category 1.01, such as Listing 1.04, concluded that Shoffner's "musculoskeletal injuries and residuals of surgery do not satisfy the criteria. . . ." (AR 11). The ALJ further states that "[t]he required objective and neurological findings are not demonstrated by the evidence of the record." (AR 11). However, as Shoffner points out there is medical evidence in the record that pertains to listings in category 1.01 such as Listing 1.04. (AR 331, 395-96). Listing 1.04 includes "[d]isorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The record includes evidence that showed that after Shoffner was seriously injured in the truck accident while working, a cervical laminectomy and L-S laminectomy were subsequently performed. (AR

4

395-96). There is also evidence in the record indicating, for example, that Shoffner had a herniated disc C6-C7, and "nucleus pulposus and fibrocartilage tissues with ragged fraying and fibular degenerative changes." (AR 331). Shoffner also correctly points out that, based on the medical record, the ALJ should have addressed listings such as Listing 1.03, which deals in part with "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively" and Section 4.00, which deals with the cardiovascular system. 20 C.F.R. Pt. 404, Subpt. P, App. 1. There is no indication that the ALJ adequately considered such listings.

Shoffner also argues that the ALJ failed to properly consider his psychiatric impairments when determining whether his impairments met the requirements for Listing 12.04, which deals with Affective Disorders. Shoffner argues that although the ALJ considered paragraph B criteria for Affective Disorders, which deals with a set of impairment-related functional limitations, the ALJ erred by not considering paragraph A criteria for Affective Disorders, which deals with a set of medical findings. *Id.* The ALJ specifically addressed the paragraph B criteria and paragraph C criteria finding that the criteria for paragraph B were not met and the criteria for paragraph C were met. (AR 11-12). Although the ALJ adequately addressed the paragraph B criteria and paragraph C criteria, since this case will be remanded for further proceedings, the ALJ on remand should address the paragraph A criteria as well.

Shoffner has also shown that Dr. Larry Kravitz (Kravitz) mistakenly testified at the Hearing that Shoffner's alcohol dependence was in partial remission. (AR 49). The ALJ relied upon such information provided by Kravitz and stated in his findings that Shoffner's alcohol dependence was in "partial remission." (AR 11). SSA admits that Kravitz misstated the diagnosis of Shoffner at the Hearing. (Ans. 7). SSA argues, however, that there was no significant prejudice to Shoffner by such mistake. The ALJ indicated that in formulating his decision, he took the testimony of Kravitz into consideration, and thus the ALJ may have relied in part on inaccurate information. (AR 15). On remand, the ALJ should ensure that his findings are premised only on accurate information concerning Shoffner's limitations.

Finally, Shoffner correctly points out that the ALJ failed to specify whether he considered the effect of the combination of Shoffner's physical and mental impairments at step three. In determining whether a claimant has a disability, "[a]n ALJ must also analyze a claimant's impairments in combination." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). SSA argues that it can be implied from the content of the ALJ's decision that he considered the effect of such a combination of impairments. (Ans. 8). On remand, the ALJ should specifically address the effect of the combination of impairments so as to make his findings clear and unambiguous in this regard.

SSA also argues that Shoffner cannot show that he meets the durational requirement in Listing 12.04. (Ans. 4). However, Shoffner argues, and SSA does not dispute, that the ALJ never addressed the statutory durational requirement when

conducting the Hearing or in making his decision at step three. Thus, it is improper to consider such an argument on review at this juncture. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)(stating that "principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [court] review to the reasons supplied by the ALJ").

Although Shoffner has not shown at this juncture that he meets all of the requirements for any particular listing, Shoffner has shown that the ALJ failed to provide a logical bridge between the record and his conclusions, and failed to address pertinent listings and criteria at step three. On remand, the ALJ should address all pertinent listings criteria, and should adequately explain his conclusions at step three.

II. RFC Determination

Shoffner argues that the ALJ erred in his RFC determination. The RFC determination "is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ must base the RFC determination "on all the relevant evidence in the record." *Id.*; *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)(stating that an ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence"). The ALJ concluded that Shoffner "has the residual functional capacity to perform light unskilled work . . . not requiring more than occasional overhead reaching, kneeling, stooping, crouching, crawling; or

7

climbing of ladders ropes and scaffolds; and with only occasional contact with the general public." (AR 12). The ALJ in determining Shoffner's RFC considered facts such as Shoffner's gait and ability to walk without support, limitations in performing tasks such as overhead reaching, kneeling, stooping, and crouching, and Shoffner's mental limitations. (AR 14).

Shoffner argues that the ALJ failed to discuss his congestive heart disease and coronary artery disease or the limitations resulting from his pain stemming from his spinal condition. (Mot. 9). Although the ALJ referenced Shoffner's "congestive heart failure," the ALJ's decision does not indicate that the ALJ gave any meaningful consideration to the full extent of Shoffner's heart condition or the limiting effects of pain relating to his spinal condition. (AR 12-15). On remand, the ALJ must adequately consider and discuss such issues when making the RFC determination.

III. Credibility Evaluation

Shoffner argues that the ALJ erred in evaluating the credibility of Shoffner. Credibility assessments made by an ALJ are given "special, but not unlimited, deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(stating that "[t]he ALJ must consider a number of factors imposed by regulation, . . . and must support credibility findings with evidence in the record"). The ALJ concluded that Shoffner's "statements concerning the intensity, persistence and limiting effects of [the] symptoms, when compared against the objective evidence and evaluated using factors listed in Social Security Ruling 96-7p, w[ere] not credible in view of

8

especially the lack of supporting findings in the documentary records along with the use of medication, pursuit of treatment and activities that include two jobs lasting three months after his alleged onset of disability." (AR 13). The ALJ also stated that Shoffner's "testimony was inconsistent such as that he could not walk even 50 feet but also that he walks the dog." (AR 13).

Shoffner correctly points out that the ALJ's credibility assessment contains vague generalities that fail to identify the meaning of such statements or sufficient basis for the credibility finding. For example, the ALJ fails to explain what he meant by his reference to Shoffner's "use of medication" as a basis to find Shoffner's testimony lacking in credibility. (AR 13). Also, to the extent that the ALJ faulted Shoffner for his "pursuit of treatment," the record does not indicate that the ALJ ever questioned Shoffner in this regard and gave Shoffner a chance to explain any gaps in treatment. (AR 13). As to the ALJ's conclusion that because Shoffner stated he could walk his dog, he was not credible as to his limitation in walking no more than 50 feet, the ALJ again failed to adequately develop the record. At the very least, the ALJ should inquire whether walking the dog entailed walking more than 50 feet. Nor did the ALJ explore in detail other relevant evidence in the record relating to walking the dog such as the testimony of Shoffner's wife indicating that Shoffner "tried walking the dogs," but "ends up turning back around." (AR 13, 44). The ALJ stated in his decision that Shoffner "walks the dogs but turns around after a block." (AR 13). However, Shoffner's wife did not specifically testify as to how far Shoffner was able to walk the dog without needing to turn back. (AR 44). The ALJ

9

also faulted Shoffner for attempting to work for three months after the onset of his disability, finding that it was a basis to conclude that Shoffner was exaggerating his symptoms. However, the ALJ again failed to adequately develop the record as to such employment and assess whether such failed employment actually supported Shoffner's disability claim. Shoffner contends, for example, that the ALJ did not consider facts such as that the employment was only part-time and that Shoffner was ultimately terminated from such employment due to his physical limitations. Shoffner did not testify at the Hearing that he was fully capable of working those three months. He testified that he "had to force [him]self," and that he "couldn't tolerate the pain after [he] got home. . . ." (AR 37). Shoffner testified that the employment ended because he "couldn't tolerate the pain." (AR 28). The ALJ failed to adequately explain why Shoffner's apparent attempt to test his limitations to see if he was able to engage in gainful employment should have been held against Shoffner as evidence of a lack of a disability. Thus, while Shoffner has not established his credibility at this juncture, on remand the ALJ should properly develop the record and provide a logical bridge between the evidence in the record and any conclusion by the ALJ as to Shoffner's credibility as to his symptoms and their effects.

IV. Step Five Analysis

Shoffner argues that the ALJ erred in his step five analysis, when he was required to assess the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant could engage in other work. *Craft*,

10

539 F.3d at 673-74. Shoffner argues that the ALJ did not pose an appropriate hypothetical question to the vocational expert (VE). *See Steele*, 290 F.3d at 942 (stating that "[h]ypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record")(emphasis in original). SSA argues that the hypothetical questions that the ALJ presented to the VE was proper because it included "all credible limitations as found by the ALJ." (Ans. 11). However, as discussed above, the ALJ erred in certain credibility determinations. Thus, on remand, the ALJ should reformulate the hypothetical questions posed to the VE accordingly. Based on the above, Shoffner's motion for summary judgment is granted in part and the instant action is remanded to the SSA for further proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing analysis, Shoffner's motion for summary judgment is granted in part and this matter is remanded to the SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: June 12, 2014